UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKEY MOSLEY,

                Plaintiff,                  Case No. 2:17-cv-12997
                                              District Judge Sean F. Cox
v.                                         Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 12), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 14) and AFFIRM THE
COMMISSIONER'S DECISION</u>**

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 12), **GRANT** Defendant's motion for summary judgment (DE 14),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

        Plaintiff, Rickey Mosley, brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 12), the

Commissioner's cross-motion for summary judgment (DE 14), and the

administrative record (DE 8).

### A.   Background and Administrative History

Plaintiff alleges his disability began on March 1, 2013, at the age of 47.  (R.

at 291.)  In his March 4, 2014 disability report, he lists several conditions (right

shoulder (post rotator cuff repair), migraine headaches, seizures, arthritis (back,

left knee and hands), high blood pressure, acid reflux, diabetes, and gout) that limit

his ability to work.  (R. at 313.)  His application was denied on June 3, 2015.  (R.

at 228-238.)

On August 7, 2015, Plaintiff requested a hearing by an Administrative Law

Judge ("ALJ").  (R. at 253-254.)  Shortly thereafter, on or about August 11, 2015,

he completed an appeal disability report, wherein he claims to have suffered a July

16, 2015 seizure.  (R. at 356.)  By a letter dated April 8, 2016, the SSA sought

further action from Plaintiff's counsel.  (R. at 364-374.)  Approximately 3 weeks

later, on or about April 28, 2016, Plaintiff submitted forms regarding his work

background, recent medical treatment, and medications.  (R. at 375-377.)

Then, Plaintiff submitted an August 2, 2016 pre-hearing statement.  (R. at

381.)  On August 4, 2016, ALJ Dennis M. Matulewicz held a hearing, at which

Plaintiff and a vocational expert (VE), Zachary Matthews, testified.  (R. at 190-

227.)  ALJ Matulewicz issued an opinion on September 20, 2016, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 175-189.)

On November 21, 2016, Plaintiff submitted a request for review of the hearing decision/order.  (R. at 285-288.)  Plaintiff submitted 164 pages of material, including medical records, a seizure questionnaire dated April 5, 2017, and a function report dated March 8, 2017.  (R. at 7-170.)  However, on July 10, 2017, the Appeals Council denied Plaintiff's request for review, noting, *inter alia*, that the additional evidence did not relate to the period at issue.  (R. at 1-6.)  Thus, ALJ Matulewicz's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on September 12, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 164 pages of medical records that were available to the ALJ at the time of his September 20, 2016 decision.  (R. at 382-545 [Exhibits 1F – 6F].)  In addition, Plaintiff submitted 164 pages of material, as previously described, that were available to – but were deemed irrelevant by – the Appeals Council.  (R. at 7-170.)  These materials be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of March 1, 2012 through his date last insured of March 31, 2014. (R. at 180.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: obesity, gout, essential hypertension, migraine headaches, inflammatory arthritis, gastroesophageal reflux disease (GERD), and status post right shoulder rotator cuff repair. (*Id*. at 180-181.) At **Step 3**, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 181.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a), with the following limitations: the claimant could lift up to twenty pounds occasionally, and up to ten pounds frequently. He could sit for six hours of an eight-hour workday and stand and/or walk for six hours of an eight-hour workday. [*i.e., exertional limitations*] The clamant could not use ladders, ropes, or scaffolds. He could only occasionally stoop, crouch, kneel, crawl, balance, or climb ramps or stairs. [*i.e., postural limitations*] He should have avoided walking on uneven

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

> surfaces.  [*i.e., environmental limitations*]  The clamant could not
> reach to do over-the-shoulder work with his right upper extremity.  He
> could frequently (but not constantly) handle, finger, and feel with the
> right upper extremity.  [*i.e., manipulative limitations*]  The claimant
> could not work with hazards including dangerous/unprotected
> machinery or work at unprotected heights.  [*i.e., environmental
> limitations*]  He could only occasionally bend, twist, or turn at the
> waist or neck.  [*i.e., postural limitations*]  The claimant could only
> occasionally push and pull with his right upper extremity.  [*i.e.,
> manipulative limitations*]

(*Id*. at 181-184.)  At **Step 4**, the ALJ determined that, through the date last insured,

Plaintiff was unable to perform any past relevant work.  (*Id*. at 185.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that, through the date last insured, there were jobs that existed in

significant numbers in the national economy that Plaintiff could have performed.

(*Id*. at 185-186.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, at any time from March 1, 2012,

the alleged onset date, through March 31, 2014, the date last insured.  (*Id*. at 186.)[2]

## D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

---

[2] Plaintiff stopped working on March 1, 2012.  (R. at 302, 306, 308, 313, 340.)  In
some places, his alleged onset date is listed as March 1, 2012.  (*See*, *e.g.*, R. at 180,
186, 229, 273, 277, 353.)  However, the alleged onset date is also listed as March
1, *2013*.  (*See*, *e.g.*, R. at 291, 309.)  The latter date perhaps makes more sense,
considering Plaintiff's testimony that he was fired in March 2012.  (R. at 197-198;
*see also* DE 12 at 3.)

under the Social Security Act, the Court "must affirm the Commissioner's decision
if it 'is supported by substantial evidence and was made pursuant to proper legal
standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)
(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see
also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as
to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under
this standard, "substantial evidence is defined as 'more than a scintilla of evidence
but less than a preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241
(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.
1994)). In deciding whether substantial evidence supports the ALJ's decision, the
court does "not try the case *de novo*, resolve conflicts in evidence or decide
questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);
*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,
to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.
The Court must "'take into account whatever in the record fairly detracts from
[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,
395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487
(1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

Plaintiff identifies the single, generic appellate issue as:  "Whether the Administrative Law Judge's Decision is supported by substantial evidence?"  (DE 12 at 4.)  This broad statement seemingly fails to constitute the "*concise* statement of the issues presented . . ." required by the local rules.  E.D. Mich. LR 7.1(d)(2) (emphasis added).  It also does not satisfy the Undersigned's practice guidelines for briefing in social security cases:

> All motions and briefs must comply with Local Rule 7.1. The parties are particularly reminded of the requirement that all briefs must include an "Issues Presented" page. On that page, the parties shall outline the issues to be presented in their briefing. In the case of a motion for summary judgment or remand, the "Issues Presented" must indicate the error allegedly committed by the Administrative Law Judge, i.e., the bases for the appeal and grounds for reversal. Within the parties' briefs, the issues presented should be labeled as section headings, and should match the items listed on the "Issues Presented" page. Any issue addressed in the brief that is not both 1) included in

Issues Presented and 2) labeled as a section heading within the brief, will not be considered by the Court.

*See* www.mied.uscourts.gov.  From reading Plaintiff's Statement of Issues, one cannot tell exactly what error the ALJ is supposed to have committed.  Plaintiff's attorney is cautioned that he must comply with this requirement in the future.

That being said, the Court has done its best to discern the specific issues fairly raised by Plaintiff's motion and brief, approximately two pages of which are dedicated to argument.  Within his introduction, Plaintiff points to the August 8, 2013 notes from Oakland Orthopaedic Surgeons, which concerned Plaintiff's shoulder and wherein Matthew J. Siskosky noted positive impingement testing. (DE 12 at 3, R. at 384; *see also* DE 14 at 5.)  This is Plaintiff's only express citation to his medical records.  Plaintiff's remaining citations to the administrative record are the hearing transcript (R. at 199, 210-211, 220) and the ALJ's Step 2 conclusion (R. at 180.)  (*See* DE 12 at 3-7.)

At the beginning of his analysis, Plaintiff draws the Court's attention to his "right shoulder impingement syndrome which prevents him from performing repetitive work with his right arm," and his "lack [of] any entry level computer skills."  (DE 12 at 5.)  Despite Plaintiff's claim that his analysis focuses on Step 5 of the sequential evaluation (*id.*), the Court construes Plaintiff's two largely unsupported and undeveloped pages of argument as setting forth challenges based on:  **(1)** the ALJ's failure to fully develop the record; **(2)** the ALJ's credibility

assessment; **(3)** the adequacy of the exertional limitations; and, **(4)** the effect of Plaintiff's right upper extremity manipulative limitations upon his ability to perform basic computer skills.  (DE 12 at 5-7.)  The Commissioner argues that: **(1)** "[t]he ALJ properly considered Plaintiff's limitations[,]" and Plaintiff "does not show the RFC required more limitations[;]" and, **(2)** Plaintiff "did not show he could not turn on a computer or press buttons on a keyboard."  (DE 14 at 8-14.)

## 1.    Was there a failure to develop the record?

Plaintiff alleges that the ALJ "failed to fully develop the record . . . ."  (DE 12 at 6.)  Although this particular paragraph of Plaintiff's argument suggests that the ALJ should have developed the record further with respect to Plaintiff's "shoulder, back, and knee injuries," it only specifically complains about his "right arm disability," namely complaining that "there was no discussion regarding future treatment and Plaintiff's restrictions."  (*Id.*)

Here, the Court assumes that Plaintiff takes issue with the ALJ's reference to the May 9, 2013 and August 8, 2013 records from Oakland Orthopaedic Surgeons.  (R. at 182, 382-387.)  Specifically, the ALJ noted the referral to (or recommendation to undergo an evaluation by) an arthroplasty specialist.  (R. at 182, 384.)  Yet, the ALJ later observed, "[i]t does not appear that the claimant followed up with an arthroscopy specialist for shoulder pain as directed in 2013."  (R. at 184.)  However, Plaintiff provides no authority for his statement that "when

an examin[ing] source fails to diagnose and discuss a primary medical condition[,] there is a need to remand for further consideration of the medical evidence." (DE 12 at 6.)

Perhaps more importantly, the Court suspects this argument is based upon the SSA regulation that states, "[w]e will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. §§ 404.1512(d), 416.912(d) (effective June 12, 2014 to April 19, 2015). If so, Plaintiff has not shown the Court that he gave the SSA permission to request any such reports.

### 2.    Was the ALJ's credibility assessment appropriate?

Plaintiff claims that the ALJ based his Step II severity findings "on the basis of his subjective analysis[,]" and "did not consider Plaintiff's testimony related to his ability to sit, stand, walk or use his right arm." (DE 12 at 6.) Presumably, Plaintiff is referring to his testimony that he "couldn't lift up off the table, above the table[,]" "couldn't lift [his] hands above the table as far as . . . lifting up to [his] shoulder[,]" and "had a problem with [his] shoulder[,]" (R. at 211). (*See* DE 12 at 5).

Plaintiff appears to be challenging the ALJ's conclusion that "claimant's statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence

in the record for the reasons explained in this decision." (R. at 182.) *See* SSR 96-

7P (S.S.A. July 2, 1996) ("Assessing the Credibility of an Individual's

Statements"). However, to the extent Plaintiff is attempting to challenge the ALJ's

consideration of "[f]actors relevant to [his] symptoms, such as pain," 20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3) (effective June 13, 2011 to March 26, 2017), his

argument is undeveloped.

Moreover, within the RFC determination, the ALJ cited from the daily

activities portion of Plaintiff's Function Report (*e.g.*, personal care, meals, house

work, getting around and shopping), as well as several of the medical records then

before him. (*See* R. at 182-184, 328-330.) Thereafter, the ALJ specifically stated:

> In sum, the record does not provide evidence of any impairment or
> combination of impairments that render the claimant unable to work
> prior to the date last insured. It does not appear that the claimant
> followed up with an arthroscopy specialist for shoulder pain as
> directed in 2013. The hearing testimony and records indicate that the
> claimant did not begin using a cane until October 2014, well after the
> date last insured. The claimant reported that both his headaches and
> back pain improved with medication. The record does not contain any
> images of the claimant's back or knee that support his allegations of
> pain in these areas. The record indicates that the claimant's
> hypertension is mostly controlled when he takes his medication. The
> claimant was diagnosed with rheumatoid arthritis, but his ANA was
> negative.

(R. at 184.) Thus, the ALJ considered Plaintiff's "daily activities[,]" "[t]he type,

dosage, effectiveness, and side effects of any medication you take or have taken to

alleviate your pain or other symptoms[,]" and "[t]reatment, other than medication,

you receive or have received for relief of your pain or other symptoms[.]"  20

C.F.R. §§ 404.1529(c)(3)(i),(iv),(v), 416.929(c)(3)(i),(iv),(v).  Plaintiff's

undeveloped argument does not show any error in the ALJ's credibility

determination – a burden that is Plaintiff's to meet.  *Walters v. Comm'r of Soc.*

*Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant

has the burden of proof; this burden shifts to the Commissioner only at Step

Five.").

### 3.  Plaintiff has not shown that the RFC's exertional limitations are inadequate.

An RFC's exertional limitations include lifting, carrying, standing, walking,

sitting, pushing and pulling.  *See*, *e.g.*, 20 C.F.R. §§ 404.1569a(b), 416.969a(b).

As noted above, the ALJ here determined that Plaintiff was exertionally limited to

sedentary work, with the following limitations lifting "up to twenty pounds

occasionally, and up to ten pounds frequently[,]" sitting "for six hours of an eight-

hour workday," and standing and/or walking "for six hours of an eight-hour

workday."  (R. at 181.)

Plaintiff claims that the ALJ failed to consider the effect of his shoulder,

back, and knee injuries "on his ability to perform substantial gainful activity."  (DE

12 at 6.)  While Plaintiff notes his "shoulder impingement syndrome, knee

problem, and the fact that [he] could not sit in one position due to chronic pain[,]"

and contends that, during the hearing, he "was not sitting, he was squirming due to

his discomfort[,]" (DE 12 at 6-7), something that the ALJ noticed (*see* R. at 210), Plaintiff has not established a more restrictive RFC than that found by the tribunal – a burden that is Plaintiff's to meet. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). *Berry v. Comm'r of Soc. Sec.*, No. 16-10548, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016) (Morris, M.J.) ("Berry gives no indication what additional restrictions might be necessary to accommodate his conditions, but merely mentions the possibility that the ALJ *could have* included more restrictive limitations in his RFC assessment.") (emphasis in original), *report and recommendation adopted*, No. 16-10548, 2017 WL 67458 (E.D. Mich. Jan. 6, 2017) (Rosen, J.).

> **4.     Plaintiff has not shown that the RFC's right upper extremity manipulative limitations prevent the exercise of basic computer skills.**

Plaintiff also seems to challenge the ALJ's right upper extremity manipulative limitations, as they relate to his right shoulder impingement syndrome and the use of his right arm.  (DE 12 at 7.)  The manipulative limitations assessed by the ALJ include:  "The clamant could not reach to do over-the-shoulder work with his *right upper extremity*[,]" "*[h]e could frequently (but not constantly) handle, finger, and feel with the right upper extremity*[,]" and "[t]he claimant could only occasionally push and pull with his *right upper extremity*."

(R. at 181 (emphases added).)  At Step 5, the ALJ concluded that Plaintiff is capable of performing the positions of information clerk, office clerk, and sorter (R. at 186), each of which the VE described as "unskilled" and "sedentary," (R. at 217).

Presumably referring to Plaintiff's testimony that he does not know how to use a computer or his testimony that it would be "painful to keep [his] arms stretched out[,]" (R. at 224-225), Plaintiff takes issue with the VE's testimony that the information clerk and the office clerk positions would require "some basic computer skills[,]" and that the sorter position was not one-handed and required "dexterity in the use of two hands[,]" (R. at 220-221).  (DE 12 at 3, 5, 7.)

However, the VE described basic computer knowledge as "a basic concept of a keyboard, how to turn it on, turn it off, . . . basic meanings behind the keys." (*See* R. at 219-220.)  As the Commissioner points out, Plaintiff "offers no record evidence of such complete inability."  (DE 14 at 13-14.)  First, Plaintiff did not seek disability based upon a *cognitive* deficit.  (R. at 313.)  Second, the Court notes that, even though Dr. Siskosky's August 8, 2013 office notes conclude that Plaintiff "has a chronic retracted irreparable tear and has continued symptoms," (R. at 384), this piece of evidence does not, alone, convey a *physical* inability to perform work on a computer.  In sum, Plaintiff has failed to show that the assessed right upper extremity manipulative limitations are inadequate.

14

### F.    Conclusion

The ALJ's decision was supported by substantial evidence, and no legal error which would lead to a different result has been shown.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 12), **GRANT** Defendant's motion for summary judgment (DE 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  December 18, 2018         s/*Anthony P. Patti*                            
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE



## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on December 18, 2018, electronically and/or by U.S. Mail.

                              s/Michael Williams                     
                              Case Manager for the
                              Honorable Anthony P. Patti